## LEWIS AUDENRIED et al. *vs.* WILLIAM H WOODWARD.

1. A judgment was confessed on a bond and warrant of attorney given for money loaned. Subsequently to giving the bond and warrant of attorney, there were dealings between the parties, by which the defendant claimed that the plaintiffs became indebted to him in a sum more than sufficient to discharge the debt secured by the bond. After judgment was entered on the bond, the defendant moved to stay proceedings on the execution and for the award of a feigned issue to try the question, whether the debt, which was the consideration of the bond, had been paid. From the proofs before the court on the argument of the motion, it satisfactorily appeared that there was a balance due from the defendant to the plaintiffs, independent of the debt secured by the bond: *held,* that there was no ground for awarding a feigned issue, and that the motion should be refused.

2. Where a tenant rents a coal mine, and is to pay to the lessor the rent in coal at specified prices, in the absence of any special agreement as to the condition in which the coal is to be delivered, it is the duty of the tenant to deliver it in a marketable condition; and if not so delivered, the expense necessarily incurred by the landlord in preparing it for market may be charged by him to the tenant.

The opinion of the court was delivered by

OGDEN, J. On the 12th of July, 1858, a judgment by confession was entered in this court in favor of these plaintiffs against the defendant for the sum of $1800 debt and for costs, it being the penalty of a bond, dated April 3d, 1858, conditioned for the payment of $900, with interest by the defendant to the plaintiffs or their assigns, on the 10th day of the same month. A rule was

granted at the last February term, (on an application in behalf of the defendant) for the plaintiffs to show cause why the judgment should not be set aside or the proceedings on the execution be stayed, and a feigned issue awarded to try whether the debt, which was the consideration of the bond, had not been fully paid. The argument of the rule was had, at the term of June, before a single justice of this court. It was not contended that there was fraud in procuring the bond and warrant of attorney. or that there was any failure of the consideration. The counsel of the defendant admitted that a loan of $900 was made by the plaintiffs to the defendant, on the 3d of April, 1858, and that it was to have been repaid prior to the day when the judgment was enteied, and that the loan was a distinct transaction from any other business relations of the parties; but he insisted that, in the course of a business which subsequently was done between them, the plaintiffs had become indebted to the defendant in an amount which was much more than sufficient to pay off and discharge the *loan debt* secured by the said bond and warrant of attorney, and that the judgment should be ordered by the court to be cancelled of record. It appears, in the testimony taken and upon the exhibits marked since the rule to show cause was granted, that, on the 28th of April, 1858, and also at later dates, the plaintiffs, who then owned a large coal mine or coal field, near Wilkesbarre, in Pennsylvania, and had leased out the right to dig coal therefrom for a term of years, agreed with the defendant, who was an assignee of the lease, to purchase from him all the coal of particular descriptions which he could deliver at Whitehaven, during that boating season, at prices fixed from time to time for the different sizes and qualities; and it was stipulated that they should retain in their hands an appropriate portion of the purchase money sufficient to compensate for the rent of the mine, which rent was based upon the quantity taken out, also to pay to the em-

ployees of the defendant the costs of mining and of forwarding the coal to Whitehaven, and of delivering it into boats there.

Invoices were sent to the plaintiffs weekly, by the agent of the defendant connected with the works, showing the quantity and the quality of coal thus forwarded; and the accounts of the prices made out from those invoices, and of the charges and deductions which were to be made, were kept by the plaintiffs at their office in New York.

They had an office and place of business in the city of New York, and one likewise in Philadelphia. An account current, running from the commencement of the delivery of coal to the end of December, 1858, made from the books of the office in New York, has been marked an exhibit in the cause, from which it appears that the prices for all the coal delivered by the defendant into boats at Whitehaven during the season amount to $24,956.04, and that the charges made against him amount to $24,624.38, independent of the judgment debt, leaving a balance of $331.66 due to the defendant on that account. An account current to the same date, made from marials in the office in Philadelphia, also was exhibited, from which it appears that, for matters not entered upon the books of the office in New York, and including the loan of $900 made on the 3d of April, there would be a balance due to the plaintiffs of $2088.82. By deducting from this sum the balance of $331.66, appearing to be in favor of the defendant in the New York account, the two accounts show a net balance of $1757.16 to be due, at that date, from the defendant to the plaintiffs. If this result be correct, the defendant certainly can take nothing by his motion. It was insisted, in argument, that the charges which properly should have been made against the defendant in the New York office accounts do not exceed the sum of $22,611.42, which fact, if supported, will increase his balance there from $331.66 to $2344.58, and will overcome the balance of $2088.82, appearing in the Philadelphia account to be due to the plaintiffs.

There is a charge in the New York account, made on the 27th of July, of $400, and one made on the 23d of August, of $600, which are disputed by the defendant, because they appear as payments by the plaintiffs to James H. Stanton & Co. It is proved, by the testimony of John Stanton, that Woodward purchased the lease and the right to work the coal field from James H. Stanton & Co. in January, 1858, and gave his three promissory notes on time in payment thereof, amounting together to $1000, and that subsequently, in the presence of the witness, he requested the plaintiffs to take those notes up for him, and to reimburse themselves from the first profits on the coal. The plaintiffs retired those notes by their acceptances of Stanton & Co's drafts of four and of six hundred dollars at thirty days, which acceptances were paid by them at maturity. The objection against the propriety of charging the amounts of those notes in the coal accounts cannot prevail.

A charge of $187.70 of cash, paid for a patent coal-breaker, was also said to be incorrect, and likewise a charge of $307.19 for cash advanced. It satisfactorily appears, from the proofs, that it was the business of the tenant of a colliery, and not of the landlord, to provide a breaker for preparing the coal for market; and as the defendant could not obtain one on his own responsibility, but requested aid from the plaintiffs, all the payments which they made, both in New York and in Philadelphia, for the construction of that machine, and for the expenses of furnishing it to the defendant, are proper items of charges in the accounts. It was proved, by Mr. W. G. Audenried, one of the plaintiffs, that the charge of $307.19 is for money paid by them for the accommodation of the defendant upon his draft on them at sight. Objections were made to other items of charge in the New York accounts, amounting to $500, which objections were met by the testimony; but it is not necessary for me here to refer to them and to the details of the proofs for the proper determination of this application.

The three sums which have been noticed are sufficient for my purpose—they amount to $1494.89. By deducting this sum from the balance of $2344.58, assumed by the counsel to be due to the defendant on the New York account, that balance is reduced to about $850 in favor of the defendant. He, likewise, has denied the correctness of several of the charges made against him in the Philadelphia account, to wit, $100 of the date of 20th of March, 1858, $399.40 of the 17th of May, $158.75 of about the same date, $158.58 on account of the coal-breaker, $189.09 for rent on coal gotten out by the defendant from the mine, but not shipped to the plaintiffs, and several other items, amounting to over $200. The testimony shows that the item of $100 was money lent to the defendant by a check of the plaintiffs, which bears his endorsement; also that the item of $158.75 was for money advanced by the plaintiffs, at the request of the defendant, in returning for him, after protest, his draft made upon and accepted by one Harding, but dishonored at maturity; and that the item of $158.58 was cash paid on account of the coal-breaker. This subject of charge was settled in favor of the plaintiffs in my examination of the New York account. The charge of $399.40 is for the face of a note and the protest, dated the 14th of December, 1857, payable in five months at a bank in Philadelphia, signed by Wm. H. Woodward & Co., a signature sometimes used by him in his business, in favor of John E. Woodward, endorsed by him to James H. Stanton & Co., and by them, before maturity, endorsed to the plaintiffs.

The *bona fides* of the note has not been questioned; and although there was no proof that the defendant requested the plaintiffs to discount the note for Stanton & Co., I can see no reason, in the nature of their business relation, why the amount of it should not have been charged in the account between the plaintiffs and the defendant after the defendant had failed to pay it at matu

z*

rity.    The sum of $189.09 for rent on coal, gotten out by the defendant, and disposed of by him at Whitehaven and elsewhere, is made up from dates furnished to the clerk and book-keeper of the plaintiffs by the agent of the defendant, and was shown by the proofs to be a proper charge in accordance with the terms of their contracts.    Without meaning to say or to leave it to be inferred that I doubt the correctness of the other items in the plaintiffs' accounts, I shall forbear going into a more critical examination of them, because I have shown that enough of them have been sufficiently established to support the conclusion which I have reached in this case.

The several charges in the Philadelphia account that have been looked into, and found to be correct, show a balance of indebtedness there from the defendant to the plaintiffs $945.82, without including the loan of $900, for which the judgment in question was confessed.    By deducting from this the sum of $850, the balance which, for the purposes of this application, I have assumed to place to the credit of the defendant on the New York account, a balance of nearly $100 will stand against the defendant.

This result shows that no part of the debt which was originally represented by the bond and warrant of attorney, but now in judgment, has been paid, and that no ground has been laid which can justify the court in awarding a feigned issue.    The motion is denied with costs, and the rule staying proceedings on the execution, which was granted in March last, should be discharged.